the sureties being purely personal, the witness was com-
petent for the plaintiffs below : Talmage *v.* Burlingame,
9 Barr, 21 ; Simpson's Executor *v.* Bovard, 24 P. F. Smith,
351 ; Good *v.* Calvert, 1 Pennypacker, 140.    It is very
doubtful whether the receipt unexplained could have
operated to the injury of the sureties.

Judgment affirmed.

## HUNTINGDON COUNTY.

JULY TERM, 1883, No. 84.                    MAY 23, 1883.

## Myton's Appeal.

An administrator sold the real estate of the decedent for the pay-
ment of debts under an order of court the terms of which were "one
half of the purchase money to be paid on confirmation of the sale, and
the balance in one year, with interest."    The purchaser gave a bond
and mortgage to the administrator for the half remaining unpaid.
The administrator filed a final account, charging himself with the cash
received, and also with the amount secured, and his account was con-
firmed.    Five years thereafter the administrator satisfied of record the
mortgage by an entry which acknowledged payment and referred to an
agreement of the same date between the widow of the decedent and
the purchaser.    This agreement provided that the share of the widow
should remain in the hands of the purchaser, and that he should pay
her the interest on it during her life, and at her death pay the princi-
pal to those entitled, and she released the administrator from all
further liability.    Nineteen years afterward the purchaser made an
assignment for the benefit of creditors and the assignee sold the real
estate.    At the sale the widow gave notice that the land would be sold
subject to the lien.    She and the administrator both testified that they
had no intention to release the land.    The court below made absolute
a rule taken by her upon the administrator, the purchaser from him,
and the purchaser from the assignee to show cause why the entry of
satisfaction upon the mortgage should not be taken off as to her share
and an assignment of it made to her and her children.    *Held* by a di-
vided court that the decree should be affirmed.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT,
GREEN, and CLARK, JJ. ; PAXSON, J., absent.

Appeal of Albert Myton from a decree of the Court of
Common Pleas of *Huntingdon County*, making absolute
a rule to show cause why the satisfaction of a certain
mortgage made by A. M. Oaks to Robert Johnson should
not be stricken off.

[Myton's Appeal.]

The facts, as they appeared from the petition for the rule, the depositions taken to support it, and the records of the Court, were as follows : William Johnston died in 1854 intestate, leaving a widow, Elizabeth Johnston, and four children, and seized of a farm in Huntingdon county. On March 14, 1855, letters of administration on his estate were granted to Robert Johnston, a brother of the decedent. On November 20, 1855, the administrator presented his petition to the Orphan's Court, praying for an order to sell the real estate for the payment of debts. The Court ordered that the sale should be made "one half of the purchase money to be paid on confirmation of the sale, and the balance in one year, with interest." On the same day the administrator's bond was approved, and on January 17, 1856, he made return that he had sold the said real estate at public sale, after due notice, to Alexander M. Oaks for $6,101 03. No exceptions were filed to this return, and the sale was confirmed. The administrator executed and delivered to A. M. Oaks a deed for the premises sold, and the purchaser paid one half the purchase money in cash, and gave a mortgage on the farm bought by him for the other half. This mortgage was dated January 31, 1856, and was recorded on February 1, 1856. It recites the obligation of Oaks in the sum of $6,101 03, conditioned for the payment of $3,050 50½, "with interest thereon from the 17th day of January, A. D. 1856," upon the 17th day of January, A. D. 1857. On October 7, 1857, Robert Johnston filed his final account as administrator of William Johnston, deceased. He charged himself, *inter alia*, with the following items :

1856, January 17, To first payment on real estate sold to A. M. Oaks for payment of
debts, . . . . . . . . . . . . . . . . . . . $3,050 51
1857, January 17, To second payment on same,   3,050 51
1857, January 17, To interest on second payment for one year, . . . . . . . . . . . . .    183 03

The balance against the administrator was found to be $1,725 61. The account was confirmed absolutely January 13, 1858. On June 19, 1862, Robert Johnston entered of record satisfaction of the mortgage in these words :

"I acknowledge satisfaction and payment of the bonds secured by this mortgage, and the lands therein described are discharged from the lien thereof, and the widow's share of surplus, after payment of debts, secured to her by the agreement and obligation of A. M. Oaks, recorded

in Record Book (miscellaneous) No. 1, page    . Witness my hand and seal this 19th day of June, A. D. 1862.

ROBERT JOHNSTON, [L. S.]"

On the same day, the following agreement in writing, referred to in the above entry of satisfaction, was made between A. M. Oaks and Elizabeth Johnston:

"Whereas, by the administration account of Robert Johnston, administrator of William Johnston, deceased, filed October 7, 1857, there appears to be a balance of $1,766 99 due to the widow and heirs of said deceased, which was represented by the purchase money due from A. M. Oaks, charged on the account, but which had not been collected, and the said Oaks being guardian of two of the four children of said deceased, and having paid one of the others who is of full age his full share of the estate, and it being agreed that the share of the widow, or one third of said balance, shall also remain in the hands of the said Oaks, and he to pay her the interest thereof, the said Oaks has been credited on his bonds for purchase money with the whole amount of said balance on said account as of the date the same was filed, except the share of Jane O. Port, who is of age, and has received her share through the administrator.

Thus, balance on account, . . . . . . . . . $1,766 99
Share of Jane O. Port, . . . . . . . . . . .     294 50

Credited on bond as of October 7, 1857, .  $1,472 49
Share of widow, . . . . . . . . . . $588 99
Share of three children, . . . . . .  883 50
                                    ———————  1,472 49

Now, it is agreed that the said Alexander M. Oaks shall pay the interest on above sum of $588 99 to the widow during her life, and at her death, the principal to those entitled to receive it, and will also indemnify the said administrator against any claims on the part of Andrew J. Johnston, who received his share through said Oaks, and the widow hereby releases the said administrator from all further liability to account further with her or pay said sum, or interest thereon, to her."

On June 19, 1881, A. M. Oaks made an assignment for the benefit of his creditors. In December, 1881, the assignee, by order of the Court, sold his real estate, including the farm embraced in the Johnston mortgage. At the sale, public notice was given by Elizabeth Johnston that $588 99, with interest, remained unpaid, and was claimed to be a lien, and that the purchaser would buy

"subject to the lien of said purchase money and mortgage." The farm was purchased by Albert Myton for $1,085, a judgment creditor, and the sale to him was confirmed absolutely on January 16, 1882, and the assignee was authorized to receive the whole purchase money in cash. This was paid and a deed delivered to Mr. Myton.

On October 25, 1881, Elizabeth Johnston presented her petition to the Court, praying that the satisfaction of the mortgage by Robert Johnston on June 19, 1862, be taken off as of the date of its entry to the extent of $588 99, with interest from January 17, 1881, and a proper assignment of the same be decreed to her and her children.

A rule upon Johnston and A. M. Oaks, with notice to the assignee, was granted.

February 24, 1882, a rule upon Myton to show cause was also granted.

In support of these rules, Elizabeth Johnston testified, *inter alia:*

"Mr. Oaks paid me the interest. He paid me the interest from the time the farm was sold up to within a year or two ago. I thought the money was safe where it was. I thought it was secured in the land, and I could get the interest all the time. Robert Johnston told me the money was safe in the land . . . I thought it was secured in that way, and never troubled myself about it, and I thought, whoever would own the land, the money would still be safe in it . . . I could not have understood that the money was to be taken out of the land and placed in Mr. Oaks' hands, for I did not want it done."

Robert Johnston testified, *inter alia,* that he "never knowingly satisfied the mortgage for the purpose of taking away her security against the land . . . I always understood that the widow's interest was secured in the land."

December 18, 1882, the Court made the rule absolute.

Myton then took out a writ of error and this appeal, assigning that the Court erred in making the rule absolute, and not discharging it.

*George B. Orlady* and *R. M. Speer* for plaintiff in error.

A sale made by order of the Orphans' Court is a judicial sale, and passes the entire estate of the decedent, and nothing remains to be claimed by any one out of it through or by virtue of his former ownership. The pro-

[Myton's Appeal.]

ceeds of the sale after payment of the debts shall be distributed as real estate, but for them the administrator and his sureties are liable to the widow and heirs. The latter have no lien or charge upon the land for their protection, and there is no privity between them and the purchaser which enables them to call him to account. He owes them no legal duty, and they can assert none against him : Bowers *v.* Oyster, 3 P. & W., 240 ; Moore *v.* Shultz, 1 Harris, 98 ; McLanahan *v.* Wyant, 1 P. & W., 96.

The administrator had no power to change the terms of sale, and he did not attempt to do so. There could be no change in the terms of the mortgage without consent of the mortgagor. It was his right to have the mortgage satisfied at maturity on payment to the administrator. The widow and heirs were strangers to the instrument, and the mortgagor owed them nothing. Their rights, whatever they were, were not the measure of his duty. What the widow's share would be could not be legally known until the mortgage was paid to the administrator, and the latter had paid the debts. The administrator acknowledged payment in full of the debt and interest secured by the mortgage by charging himself with the amount thereof in his account. In this case, it can make no difference whether the whole amount secured by the mortgage was actually paid to Robert Johnston, for that was done which he treated and accepted as payment, and in consideration of which he satisfied and surrendered the mortgage and bond. He has not moved, and he seeks no relief from his act. A stranger to the contract and the record cannot be heard now after the lapse of twenty years.

When the widow signed the agreement of June 19, 1862, she relinquished no right against A. M. Oaks which she then held or was entitled to. She could not then have proceeded on the mortgage, nor could she have called him to account in any form. Her remedy was against the administrator and his sureties, and if she released him, it was not in consideration of any promise by him to assign her the mortgage, for the administrator made no promise whatever, but on the same day satisfied the mortgage.

The striking off of the satisfaction of a mortgage is the exercise of a high power. It may be done, but only for fraud or plain mistake. The evidence in this case shows neither fraud nor mistake, and no ground for relief : Sims

[Petrikin *v.* Myton, Treas. Huntingdon co., to use Wharton's Assig's.]

*v.* Lyle, 4 W. C. C. R., 320 ; Clow *v.* The Derby Coal Company, 2 Out., 432.

The Court cannot for any cause order the satisfaction of a mortgage to be stricken off to the prejudice of an innocent purchaser or lien creditor.

*Brown, Bailey & Brown,* and *Myton & Schock* for defendant in error.

The judgment of the Court below in this case was not a final judgment. It does not order or adjudge the payment of money by any one. Myton is not hurt by this decree. He cannot be called on for a dollar nor budged from his possession without either a *scire facias* or an ejectment on the mortgage, in both of which he has his day in court, and may make every available defense: Straub *v.* Smith, 2 S. & R., 382. Erie Bank *v.* Brawley, 8 W., 530. Kendrick *v.* Overstreet, 3 S. & R., 357. Gardner *v.* Lefevre, 1 P. & W., 73. Bossler *v.* Johns, 2 P. & W., 331. Chadwick *v.* Ober, 20 Smith, 264. Roberts *v.* Halstead, 9 Barr, 32. Lancaster *v.* Smith, 17 Smith, 427. Jones Appeal, 11 W. N. C., 554. Keemer *v.* Herr, 12 *Id.*, 90.

The assignor of a judgment or mortgage cannot satisfy it or release any obligation held for its security. If he attempts to do so such satisfaction or release is void : Fleming *v.* Parry, 12 Harris, 47. De Witt's Appeal, 26 Smith, 283.

OCTOBER 1, 1883.—PER CURIAM : On an equal division of the judges who heard the argument in this case, the decree is affirmed.

JANUARY TERM, 1883, No. 410.　　　　　　MAY 22, 1883.

# Petrikin *v.* Myton, Treasurer of Huntingdon Co., to the use of Wharton's Assignees.

1. Where land, owned by two persons as tenants in common, is sold by a county treasurer for arrears of taxes, and a surplus bond given by the purchaser to the treasurer for the use of the owners, one tenant in common of the land has no power to release the half of the bond given and held for the benefit of his co-tenant.

2. The tenants in common were not joint creditors of the purchaser in such a sense as to give to either entire control of the whole debt.